[Cite as *State v. Thompson*, 2014-Ohio-4318.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2014-T-0013** |
| - vs - | : | |
| JOHN ALBERT THOMPSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2013 CR 445.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1} Appellant, John Albert Thompson, appeals his conviction, following a jury trial, for aggravated burglary, kidnapping, and possession of criminal tools. The issues before this court are whether the convictions are against the manifest weight of the evidence and whether the trial court abused its discretion in the admission of certain exhibits. For the following reasons, we affirm the decision of the court below.

{¶2} The incident at issue occurred on the evening of June 15, 2013, at the residence of Ms. Lynda Farr in Warren, Ohio. Ms. Farr retired to bed at approximately 10:00 p.m. Her son, Brandon, was playing video games in the basement. Shortly thereafter, Ms. Farr heard a noise coming from her living room. Ms. Farr exited her bedroom and, upon entering her living room, noticed a man, later identified as appellant, positioned half-way through her window. His face was concealed by a bandana, and he was carrying a crowbar.

{¶3} The individual ordered Ms. Farr not to look at him and demanded her money and jewelry. Ms. Farr testified, "I told him that I was on welfare and I didn't have either." He raised the crowbar and ordered Ms. Farr to show him her bedroom. Ms. Farr testified that the man held the crowbar the whole time, and she complied with his demand because she was scared.

{¶4} Ms. Farr did not have any valuables in her bedroom. The man then headed toward her son's bedroom on the second floor of the home. As he exited Ms. Farr's bedroom, she picked up the phone, dialed 9-1-1, and dropped the phone so the line would remain open.

{¶5} Inside her son's bedroom, the man began to fill her son's duffle bag with electronics, including a PlayStation, Game Cube, and a computer.

{¶6} The man then proceeded downstairs with Ms. Farr. The individual still had the crowbar in his hand. As he began to walk down the steps, Officer Jason Lamtman of the Warren Township Police Department arrived at the home. Officer Lamtman drew his service weapon and ordered the suspect to the ground. Officer Lamtman testified the suspect was wearing a gray Ohio State sweatshirt, appeared to have tan-colored

pants, and was wearing a dark-colored bandana around his face, covering from his nose down.

{¶7} Instead of complying with the officer's command, the suspect "approached me, tried to walk around me and tried to go out the front door[.]" Officer Lamtman ordered him to stop. At this point, Officer Lamtman re-holstered his weapon and "attempted to apprehend him[.]" Officer Lamtman testified:

{¶8} "I did what is referred to as an arm bar technique and took the suspect down to the ground and I tried to get him into handcuffs. He resisted, he tried to squirm away from me and at one point, he was able to slip away out of my hands and he got back to his feet and ran towards the kitchen."

{¶9} During the struggle, the man's bandana fell off of his face. Ms. Farr stated she was able to observe the suspect's face during the struggle with Officer Lamtman.

{¶10} At this point, Brandon, who had a headset on while playing videogames, heard the commotion upstairs. Brandon came upstairs and collided with the suspect who was attempting to run out the back door. Brandon was able to pull the red duffle bag off the suspect's shoulder before he headed outside. The suspect headed in an easterly direction toward a wooded area.

{¶11} Officer Lamtman called for back-up. Units from the surrounding areas set up a perimeter. Officer Greg Coleman of the Warren Police Department K-9 unit was one of the responders. Officer Coleman testified that when he reached the perimeter, his K-9 started barking; Officer Coleman noticed a man walking on the side of the road. Officer Coleman testified that this individual matched the description he was given: a white male, age 35 to 40, wearing tan pants, a gray sweatshirt, and a black bandana.

3

Officer Coleman exited his vehicle, identified himself, and ordered the individual to get down on the ground. The man, however, kept walking and stated, "I didn't do nothing, I didn't do nothing, what do you want." Officer Coleman approached the suspect and took him to the ground. The suspect was handcuffed without incident. This incident occurred within 200 yards of Ms. Farr's home.

{¶12} Several items were recovered from the man's pocket, including Brandon's flash drive, a razor blade, and a glass cutter. Ms. Farr, Brandon, and Officer Lamtman identified the individual as appellant.

{¶13} Appellant was indicted on the following: Count 1, aggravated burglary, a felony of the first degree in violation of R.C. 2911.11(A)(2) and (B); Count 2, kidnapping, a felony of the second degree in violation of R.C. 2905.01(A)(2) and (C)(1); and Count 3, possession of criminal tools, a felony of the fifth degree in violation of R.C. 2923.24(A) and (C). Appellant pled not guilty to all the charges, and a jury trial ensued.

{¶14} The jury found appellant guilty of all charges. Appellant was sentenced to a term of 11 years of incarceration on Count 1, eight years of incarceration on Count 2, and 12 months of incarceration on Count 3, all of which were ordered to run consecutive to one another for an aggregate term of 20 years imprisonment.

{¶15} Appellant filed a notice of appeal.

{¶16} As his first assignment of error, appellant maintains:

{¶17} "The appellant's convictions are against the manifest weight of the evidence."

{¶18} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the

4

credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Further, a conviction resulting from a trial by jury shall not be reversed on the weight of the evidence except by the concurrence of all three judges hearing the appeal. *Thompkins* at 386, citing Ohio Constitution, Article IV, Section 3(B)(3).

{¶19} On appeal, appellant argues that because Ms. Farr was upset and shaken at the time she observed the intruder, her "entire testimony" was impacted. Appellant maintains the testimony regarding the crowbar was controversial because only Ms. Farr observed appellant with a crowbar and there was conflicting testimony as to where the crowbar was found.

{¶20} For example, Officer Lamtman reported the crowbar was recovered in the backyard of the property, yet it was actually recovered inside Ms. Farr's home. The testimony of Officer Lamtman explained this inconsistency: Officer Lamtman testified that he was not in charge of evidence collection or retention and that he gained the information regarding the location of the crowbar from radio traffic, not his own observation. Moreover, the state introduced exhibits depicting the crowbar inside Ms. Farr's home, and Officer Demyan of the Warren Township Police Department testified that he observed the crowbar on the floor of Ms. Farr's home.

5

{¶21} It must be emphasized that the trier of fact is in the best position to evaluate testimony and resolve inconsistencies, if any, by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean through a printed record. *See, e.g., State v. Sevilla*, 10th Dist. Franklin No. 06AP-954, 2007-Ohio-2789, ¶13. We therefore afford the jury verdict deference. After a detailed review of the record, we find the jury verdict was not against the manifest weight of the evidence.

{¶22} Appellant's first assignment of error is without merit.

{¶23} As his second assignment of error, appellant alleges:

{¶24} "The trial court erred and abused its discretion in admitting state's exhibits 18 through 23, 40, 42 through 46 and 49."

{¶25} Appellant objects to the admission of photographs depicting items found on his person when apprehended. These photographs illustrate Brandon's flash drive, two knives, a razor blade, a glass cutter, a woman's watch, a Mickey Mouse watch, a $25 chip, a light, a cellular telephone, hand sanitizer, and a mini-flashlight. Appellant also objected to the admission of Exhibit 49: a bag and contents found on his person when he was apprehended. Appellant maintains the admission of these items was prejudicial because the jury was allowed to infer he committed the crimes charged from the possession of the items, which were irrelevant to the crimes charged.

{¶26} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. A trial court's decision to exclude evidence will not be overturned absent an abuse of discretion. *State v. Benson*, 11th Dist. Portage No. 2001-P-0086, 2002-Ohio-6942, ¶7 (citation omitted).

6

{¶27} First, we do not agree that all of the items were irrelevant to the crimes charged. Brandon's flash drive was the only item taken from the Farr household, as Brandon was able to wrestle the duffle bag off of appellant's shoulder prior to appellant fleeing the home. Further, the razor blade, flashlights, knives, and glass cutter are tools that could have assisted appellant when engaging in criminal behavior. The evidence also reveals that appellant demanded both money and jewelry from Ms. Farr, which could explain appellant's possession of the watches, including a woman's watch.

{¶28} A review of the record in its entirety reveals that even if these items were not admitted into evidence, the state presented enough evidence to sustain appellant's convictions. Appellant was caught burglarizing Ms. Farr's home; his identity was verified by Ms. Farr, Brandon, and Officer Lamtman. Additionally, appellant was apprehended within minutes of the incident merely 200 yards from the Farr household, and his description matched that of the suspect. At the time of apprehension, appellant was wearing tan pants and a gray sweatshirt—the same outfit the suspect was wearing while inside the home of Ms. Farr. We find the trial court did not err in admitting the aforementioned exhibits.

{¶29} Appellant's second assignment of error is without merit.

{¶30} The judgment of the Trumbull County Court of Common Pleas is hereby affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

7